IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARY A. HUGHES,

    Plaintiff,

v.             Case No. 12-2339-JTM

BLUE CROSS AND BLUE SHIELD
OF KANSAS, INC.,

    Defendant.

MEMORANDUM AND ORDER

  This matter comes before the court on defendant's Motion for Summary Judgment (Dkt. 67). Defendant argues that plaintiff cannot prove her claims of retaliation and interference under the Family Medical Leave Act ("FMLA"). Plaintiff argues that existing genuine issues of material fact preclude summary judgment. After reviewing the parties' briefs and the evidence submitted with them, the court grants summary judgment to defendant.

  **I. Uncontroverted Facts**

  Plaintiff Mary Hughes was hired as a Benefits Administration Analyst by defendant Blue Cross Blue Shield of Kansas, Inc. on September 8, 2009. Plaintiff's job duties included, among other things, preparing monthly reports, communicating information to defendant's employees and former employees about their benefits, and downloading information about the employees' 401(k) plan from Fidelity Investments. During her employment with defendant, plaintiff reported directly to Lisa Burgoon, Human Resources Information Systems Benefits Communication Supervisor. Burgoon reported to Abby Lear, Manager – Employee Benefits and Corporate Health Services. Lear reported to Bob Young, Director – Human Resources. During plaintiff's

employment, Tonya Terrel was defendant's EEO/Affirmative Action Coordinator. Terrel approved or denied all of defendant's employees' FMLA leave requests.

In 2009 and 2010, plaintiff received positive performance reviews and, accordingly, received merit pay increases. In conjunction with her 2010 performance review, plaintiff replied to an email from Burgoon requesting suggestions for departmental improvement. Plaintiff responded that, among other things, she would like for Lear to be sure to provide "sufficient time to approve things when deadlines are coming." Def.'s Ex. 9 at 2.

In March 2011, plaintiff told Burgoon that, at some point, she might need time off to have sinus surgery. Burgoon told plaintiff to keep her posted about the surgery.

In March 2011, plaintiff made an error while performing the 401(k) file download from Fidelity. Errors made during the 401(k) file download process may present significant problems, including causing employees' paychecks and 401(k) investment allocations to be inaccurate. On March 25, 2011, Burgoon sent plaintiff an email regarding the error plaintiff had made. Burgoon pointed out the error and told plaintiff how to avoid making such an error in the future. Burgoon also told plaintiff that because of the severity of the error, Burgoon would include the error in plaintiff's file for her next performance review.

On March 30, 2011, plaintiff emailed Burgoon, stating that she was tentatively scheduled to undergo sinus surgery on May 12, 2011. Plaintiff did not file a request for FMLA leave. Plaintiff later decided, of her own volition, to reschedule the surgery.

On April 20, 2011, Burgoon gave plaintiff a memorandum entitled "Job Performance Concerns." The memorandum referenced, among other things, a February 2011 meeting between plaintiff and Burgoon regarding missed deadlines and plaintiff's 401(k) download error. The memorandum also outlined various accommodations defendant had made in an attempt to

improve plaintiff's job performance, followed by suggestions of ways that plaintiff might improve her performance in the future. The memorandum was signed and dated by plaintiff and Burgoon on April 21, 2011.

On May 11, 2011, plaintiff submitted a request for intermittent FMLA leave so she could care for her husband, who was diagnosed with prostate cancer. Defendant informed plaintiff that she was eligible for FMLA leave and her request would be granted once plaintiff submitted a letter of certification from her husband's physician. Plaintiff provided the letter on May 24, 2011 and received notice the same day that her FMLA leave was approved. Plaintiff subsequently applied and received approval for FMLA leave several times until her final request on October 28, 2011.

Terrel testified that in the summer of 2011, Lear expressed a desire to replace plaintiff through a reduction in force. Terrel told Lear that a reduction in force cannot be used to replace an employee, because it requires the elimination of the employee's position. Plaintiff's use of FMLA leave was not discussed during this meeting. Later that summer, defendant hired Tyler Scott to the position of HRIS Specialist, a position with different requirements and duties than the position held by plaintiff – Benefits Administration Analyst.

On September 27, 2011, plaintiff submitted a request for FMLA leave from October 12 through October 26, 2011, so she could undergo sinus surgery. October is a particularly busy time of year for plaintiff's department because the department prepares for defendant's annual enrollment period for employees, which begins on November 1. Before plaintiff's surgery, Lear indicated to plaintiff that the timing of her surgery was not good because it coincided with the busy time of year. Nevertheless, defendant approved plaintiff's request on October 6, 2011.

3

On October 28, 2011, following plaintiff's return to work from sinus surgery, Burgoon gave plaintiff another performance concerns memorandum. The memorandum noted an overall improvement since the April performance concerns memo, but addressed, in detail, three specific concerns about plaintiff's job performance. The memorandum concluded with a warning that failure to meet expectations could result in further disciplinary action, including termination. The memo was signed and dated by plaintiff and Burgoon.

On October 31, 2011, plaintiff made an error while downloading the 401(k) file from Fidelity. Instead of downloading the file once, plaintiff downloaded the file twice. Kim Farkas, one of defendant's employees, notified Burgoon of the error on November 7, 2011. Burgoon met with plaintiff on November 9, 2011 to discuss the error. Plaintiff claims she was unaware of the error until it was brought to her attention by Tyler Scott. Burgoon, however, noticed records in the system that did not comport with plaintiff's recitation of the events leading to the error. Based on this meeting, Burgoon formed the opinion that plaintiff was not being truthful about how the error occurred and decided to terminate plaintiff. Burgoon then met with Lear, who agreed that Burgoon had made the correct decision. Pursuant to company policy, Burgoon and Lear met with Terrel to discuss the decision to terminate plaintiff. Terrel approved the termination.

On November 8, 2011, plaintiff requested FMLA leave to be taken later that month. That same day, defendant pre-approved plaintiff's request, pending receipt of certification. Plaintiff was terminated on November 10, 2011.

## II. Legal Standard – Summary Judgment

Under FED. R. CIV. P. 56(a), summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id*.

When ruling on a motion for summary judgment, the court draws all reasonable inferences from the factual record in favor of the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hirase-Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 781 (10th Cir.1995)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant need not negate the nonmoving party's claim, but rather "[point] out to the court a lack of evidence for the nonmoving party on an essential element of the nonmoving party's claim." *Id*. at 671. To negate summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is not a "disfavored procedural shortcut, but rather [] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex*, 477 U.S. at 327 (quoting FED. R. CIV. P. 1).

## III. Analysis

Plaintiff argues that her termination on November 10, 2011 constitutes unlawful retaliation under 29 U.S.C. § 2615(a)(2) and unlawful interference under 29 U.S.C. § 2615(a)(1). Although the two claims are similar, "the elements and burdens of proof that apply to § 2615(a)(1) claims differ from those that apply to § 2615(a)(2) claims . . . ." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Accordingly, the court analyzes two claims separately.

### A. Retaliation Claim

Retaliation claims under the FMLA are analyzed under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Id.* "Under this analysis the plaintiff bears the initial burden of establishing a prima facie case of retaliation." *Id.* If plaintiff satisfies her burden, the burden shifts to defendant to offer a legitimate, non-retaliatory reason for the employment action. *Id.* If defendant carries its burden, plaintiff must demonstrate that defendant's proffered reason is pretextual. *Id.* (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1263 (10th Cir.1998)). Defendant is entitled to summary judgment on the retaliation claim because plaintiff failed to raise a genuine issue of material fact that defendant's legitimate non-retaliatory reason for terminating plaintiff was pretextual.

#### 1. Prima Facie Case of Retaliation

Plaintiff has stated a prima facie case of retaliation. To state a prima facie case of retaliation, plaintiff must prove that (1) she engaged in a protected activity; (2) defendant took action that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the adverse action. *Id.* at 1171. Both parties

agree that plaintiff has satisfied the first two elements. Whether plaintiff has satisfied the third element, however, is in dispute.

When assessing whether a causal connection exists, the court determines "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination." *Id.* (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)). "The standard for proving a prima facie case, however, is low." *Garrett*, 305 F.3d at 1221. And at this stage, plaintiff need not overcome defendant's proffered legitimate reason. *Id*.

Plaintiff argues that the temporal proximity between her use of FMLA leave and her termination establishes the requisite causal connection. Evidence of temporal proximity between protected activity and termination may give rise to an inference of retaliatory motive, but only when the "termination is *very closely* connected in time to the protected activity." *Id.* (quoting *Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original)); *compare Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (holding that a six-week period between protected activity and termination is sufficient to establish causation), *with Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (holding that a three-month period, by itself, is not sufficient to establish causation). Plaintiff's last request for FMLA leave was provisionally approved on November 8, 2011. Two days later, plaintiff was terminated, which plaintiff argues constitutes a very close temporal proximity. However, defendant argues that the temporal proximity calculation should not be based on the last date FMLA leave was used, but should instead be based on the first day the terminating supervisor knew plaintiff planned to use FMLA leave.

Defendant's method of calculation is correct. When calculating temporal proximity, the court uses the date the employer became aware of the protected activity as the starting point. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001); *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004); *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. App'x. 820, 823 (11th Cir. 2008). The latest possible date that defendant became aware of plaintiff's plan to use FMLA leave is May 11, 2011, the date plaintiff first requested FMLA leave.[1] Using this date, almost six months passed from plaintiff's protected activity until she was terminated on November 10, 2011. Therefore, in light of *Richmond,* plaintiff cannot establish a causal connection through temporal proximity.

Plaintiff argues that Abby Lear's expressed desire to terminate plaintiff establishes the causal connection required to establish plaintiff's prima facie case. During a meeting with Tonya Terrel in the summer of 2011, Lear expressed the desire to downsize plaintiff's position and then hire someone else in her place. As noted above, the standard for establishing a prima facie case is low, and plaintiff is not required to overcome defendant's proffered legitimate reason at this stage of analysis. Therefore, viewing this evidence in the light most favorable to plaintiff, a reasonable jury could infer from Lear's statement that the requisite causal connection exists.

Plaintiff argues that four other pieces of circumstantial evidence establish a causal connection. Because the court finds that Lear's desire to terminate plaintiff establishes a causal connection, the other evidence need not be addressed at this stage of the analysis.

---

[1] There is some dispute over when defendant became aware of plaintiff's plan to use FMLA leave. According to plaintiff, defendant knew sometime in March that plaintiff would need to use FMLA leave in the near future. Of course, using March as the starting point makes the period of time even longer. So, for the sake of illustration, the court uses May 11, 2011.

### 2. Defendant's Legitimate Non-Retaliatory Reason

Both parties agree that defendant's proffered non-retaliatory reason for terminating plaintiff—plaintiff's poor job performance—satisfies defendant's burden under this stage of the analysis.

### 3. Plaintiff's Evidence of Pretext

Plaintiff argues that six pieces of circumstantial evidence prove that defendant's proffered reason for terminating plaintiff was pretextual: (1) temporal proximity of plaintiff's termination to her use of FMLA leave; (2) a pattern of adverse actions taken against plaintiff; (3) implausibility of defendant's reason for terminating plaintiff; (4) defendant's prior treatment of plaintiff; (5) defendant's alleged desire to replace plaintiff; and (6) the falsity of defendant's reason for terminating plaintiff.[2] When determining whether a defendant's proffered reason is pretextual, the court "add[s] up the differences and similarities in light of all the evidence of pretext to determine whether a plaintiff has created a fact issue on the matter of pretext." *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1137 (10th Cir. 2003); *see Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1211 (10th Cir. 2007).

#### a. Temporal Proximity

Plaintiff's evidence of temporal proximity does not establish pretext. As stated above, a period of three months is too long to establish retaliatory motive. *Richmond*, 120 F.3d at 209. Moreover, evidence that an employer had concerns about an employee's performance before the employee took FMLA leave undercuts temporal proximity as evidence of pretext. *Metzler*, 464 F.3d at 1173–74. Not only was the nearly six-month period of time between plaintiff's protected

---

[2]Plaintiff's third and sixth pieces of evidence are essentially the same and, therefore, do not require separate analysis.

9

activity and her termination too long, but defendant also expressed concerns about plaintiff's performance before she took FMLA leave.[3]

### b. Pattern of Adverse Employment Actions

Plaintiff's evidence of a pattern of adverse actions does not justify an inference of pretext. "[P]rotected conduct closely followed by adverse action may justify an inference of retaliatory motive." *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996). And a pattern of adverse action may preclude summary judgment. *Id.* However, there must be evidence that the adverse actions were taken in retaliation for use of FMLA leave. *See Metzler*, 464 F.3d at 1173. Moreover, "[p]retext is not established by virtue of the fact that an employee has[,] . . . in the past, received some good evaluations." *Perry v. St. Joseph Med. Ctr.*, 110 Fed. App'x. 63, 68 (10th Cir. 2004) (citations and quotation marks omitted).

Plaintiff argues that she received only positive performance reviews before taking FMLA leave and that after taking FMLA leave, her "performance became the subject of a series of harsh, unfair and unfounded critiques . . . ." Dkt. 72 at 33. Uncontroverted evidence establishes that after receiving her last positive performance review, plaintiff committed a significant 401(k) file download error, was coached by her supervisor in response to the error, and then later committed another such error. That subsequent performance reviews were less positive is unsurprising and does not justify an inference of pretext.

---

[3]Defendant claims that in February 2011, plaintiff's supervisor coached plaintiff because of poor performance. Burgoon Dep. 51:13–53:11. Defendant has also supplied a document summarizing the contents of the February 2011 meeting, bearing plaintiff's signature in acknowledgement. Plaintiff, however, does not admit that the meeting occurred. She also does not claim that the meeting did not occur: "Q: Okay. Did Lisa Burgoon in February of 2011 talk to you about deadlines that you had missed? A: That I had missed? Q: Yes. A: I don't recall that. We talked about deadlines on a very regular basis . . . ." Hughes Dep. 56:15–21. Plaintiff's failure to recall the meeting does not controvert defendant's evidence that the meeting occurred.

### c. Implausibility and Falsity of Defendant's Proffered Reason for Termination

Plaintiff's evidence of the implausibility and falsity of defendant's reason for terminating her fails to justify an inference of pretext. An inference of pretext may be justified by a showing of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . ." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations and quotation marks omitted). However, the court's role is "not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006). Therefore, when deciding a challenge of pretext, the court views the facts through the eyes of the person making the decision to terminate plaintiff. *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000); *see also Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) (stating "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.").

Plaintiff's evidence fails to raise an inference of pretext. Plaintiff argues that defendant's performance concerns, as detailed in the April 2011 and October 2011 performance concerns memos, were fabricated. Plaintiff argues that many of the concerns raised by defendant in the memos were unfounded because the projects in question were either completed on time or were the responsibility of another department and, therefore, did not constitute legitimate performance concerns worthy of termination. In making this argument, plaintiff asks the court to improperly second guess defendant's business judgments and act as a "super personnel department."[4]

---

[4]Defendant has offered uncontroverted evidence that plaintiff's supervisors were concerned, not only with the results of plaintiff's work, but also with the manner in which plaintiff completed her work. Whether such concerns are legitimate grounds for termination is not a matter for the court to decide. *See E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d

11

Plaintiff also argues that because she was honest with her supervisor about the second 401(k) file download error, defendant's reliance on plaintiff's dishonesty as a reason for her termination justifies an inference of pretext. Again, the court is not concerned with the accuracy of defendant's beliefs, but instead whether they were honest. *Young*, 468 F.3d at 1250. Defendant has offered sufficient evidence to prove that it honestly believed that plaintiff was not being truthful about the 401(k) file download error. Uncontroverted evidence shows that when interviewed by her supervisor, plaintiff's recitation of events leading to the error did not match electronic records contained in the system. Plaintiff's only evidence in rebuttal is an email she sent to her supervisor, in which plaintiff explains the error as stemming from a lack of training. Apparently, defendant viewed this as an attempt by plaintiff to skirt responsibility and formed the belief that plaintiff was not being completely truthful. Such a conclusion is not so inconsistent with the evidence as to justify an inference of pretext.

### d. Prior Treatment of Plaintiff

Plaintiff's evidence of a change in treatment by Lear following Plaintiff's use of FMLA leave does not justify an inference of pretext. "[E]vidence of pretext may include . . . prior treatment of plaintiff . . . ." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (citations and quotation marks omitted). Plaintiff argues that (1) Abby Lear's comment that plaintiff's timing in using FMLA leave was not good and (2) Lear's change in attitude toward plaintiff following plaintiff's use of FMLA leave justify an inference of pretext.

The court finds these arguments unpersuasive. First, uncontroverted evidence establishes that Lear made the comment when discussing scheduling regarding plaintiff's upcoming sinus surgery, which was scheduled to occur during the busiest time of the year for the department. An

---

1312, 1322 (10th Cir. 1992) (holding that the defendant was on trial for discrimination, not for making an erroneous judgment about the seriousness of an infraction that formed the basis for plaintiff's termination).

employee is required to "consult with the employer and make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations . . . ." 29 C.F.R. § 825.302(e). And if the employee fails to consult with her employer, "the employer may initiate discussions with the employee and require the employee to attempt to make such arrangements . . . ." *Id*. Lear's comment that the timing was not good was statutorily permitted and does not raise an inference of pretext. Second, other than plaintiff's self-serving testimony, there is no evidence suggesting that Lear's availability or responsiveness to plaintiff diminished after plaintiff's use of FMLA leave. In fact, uncontroverted evidence establishes that plaintiff had problems with Lear's availability and promptness in responding to plaintiff's requests long before plaintiff took FMLA leave.

    **e. Defendant's Alleged Desire to Replace Plaintiff**

Plaintiff's evidence of defendant's alleged desire to replace her does not justify an inference of pretext. "[E]vidence of discrimination in the decision-making process must be distinguished from "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 415 Fed. App'x. 897, 911 (10th Cir. 2011). "[T]he passage of time can also render a comment too remote to support a finding of pretext." *Wagoner v. Pfizer, Inc.*, 391 Fed. App'x. 701, 708 (10th Cir. 2010); *see also Proctor v. United Parcel Service*, 502 F.3d 1200, 1213–14 (10th Cir. 2007) (holding that one isolated remark several months before plaintiff's termination did not create a genuine issue of material fact concerning defendant's reason for terminating plaintiff).

The court finds unpersuasive plaintiff's argument that Lear's expression to Tonya Terrel that Lear wanted to terminate plaintiff establishes pretext. Lear's comment was made several

13

months before plaintiff was terminated. And Lear did not make the decision to terminate plaintiff.[5] Moreover, the person plaintiff claims was hired to replace her was hired for a different position with different duties than plaintiff.[6] Therefore, Lear's comment is most appropriately characterized as a stray remark made by a nondecisionmaker, insufficient to create an inference of pretext.

### B. Interference Claim

Defendant is entitled to summary judgment on plaintiff's interference claim because defendant has offered sufficient evidence that plaintiff would have been terminated regardless of her use of FMLA leave. Under the FMLA, eligible employees are guaranteed "the substantive rights of up to twelve weeks of unpaid leave . . . ." *Metzler*, 464 F.3d at 1180. And the FMLA makes it illegal for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" those rights. 29 U.S.C. § 2615(a)(1). However, "[s]ection 2615(a)(1) is nevertheless not a strict liability statute." *Metzler*, 464 F.3d at 1180. "To prevail on an interference or entitlement theory, the plaintiff must demonstrate: '(1) that he [or she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his [or her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights.'" *Id.* (quoting *Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005)). Both parties agree that plaintiff was entitled to FMLA leave. However, the parties disagree about whether plaintiff satisfied the last two elements of her claim.

---

[5]The record indicates that Burgoon made the decision to terminate plaintiff after she investigated the second download error and interviewed plaintiff. Burgoon then told Lear about her decision. The two of them then agreed that terminating plaintiff was the right decision. Burgoon Dep. 143:3–24; Lear Dep. 139:4–9.

[6]Tyler Scott was hired in August 2011. Scott's position had a different title, different responsibilities, and required different qualifications than plaintiff's position. This evidence supports defendant's claim that Scott was not hired to replace plaintiff, but was hired to perform completely different tasks.

Plaintiff's termination satisfies the second element of her claim. "In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks' [sic] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). Termination of an eligible employee satisfies this element. *See Metzler*, 464 F.3d at 1180–81. Here, plaintiff was terminated before she had taken the full 12 weeks of leave guaranteed by the FMLA. Therefore, the second element is satisfied.

Plaintiff has failed to present evidence that there is a causal connection between her use of FMLA leave and her termination. Interference with an eligible employee's right to FMLA leave is a violation, regardless of the employer's intent. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). However, "a reason for dismissal insufficiently related to FMLA leave will not support recovery under an interference theory." *Id.* at 961. Moreover, interference caused by termination of the employee is permissible when the employee would have been terminated regardless of her use of FMLA leave. *Id.* Defendant bears the burden of proving that it would have terminated plaintiff regardless of her use of FMLA leave. *See Metzler*, 464 F.3d at 1180. Evidence of disciplinary action and warnings issued to plaintiff before her termination satisfies defendant's burden. *See id.* at 1181, n. 10 (holding that evidence of a written warning that poor performance could lead to employee's termination followed by continued poor performance satisfies employer's burden).

Defendant has offered evidence that satisfies its burden, entitling it to summary judgment on plaintiff's interference claim. Plaintiff claims that the evidence offered in support of her retaliation claim satisfies the third element of her interference claim. Even if plaintiff's evidence establishes a causal connection, defendant's evidence established that plaintiff would have been

fired regardless of her use of FMLA leave. Defendant has offered substantial evidence that plaintiff was fired because of her poor job performance. Before plaintiff was terminated, defendant issued both oral and written warnings to plaintiff that if her job performance did not improve, it would take further disciplinary action. Moreover, uncontroverted evidence establishes that plaintiff made a significant error while performing the 401(k) file download in March, was coached on the error and offered additional training to prevent such an error in the future, and subsequently made a similar error. Therefore, defendant has satisfied its burden of proving that plaintiff would have been terminated regardless of her use of FMLA leave.

**IV.  Conclusion**

For the reasons stated above, the court finds that no material fact is in genuine dispute. A reasonable jury, when viewing the evidence in the light most favorable to plaintiff, could not find in favor of plaintiff on her retaliation or interference claims.

IT IS THERFORE ORDERED this 9th day of July, 2013, that defendant's Motion for Summary Judgment (Dkt. 67) is granted.

/s J. Thomas Marten
J. THOMAS MARTEN, JUDGE